UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LISA GATHERS, R. DAVID NEW, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 17-cv-10273-IT |
| | * | |
| 1-800-FLOWERS.COM, INC., | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER

TALWANI, D.J.

Plaintiffs allege that Defendant 1-800-Flowers.com, Inc., violates Title III of the Americans with Disabilities Act ("ADA") by not making its websites sufficiently accessible to blind and visually-impaired consumers. Plaintiffs seek a permanent injunction compelling Defendant to bring its websites into compliance with the requirements of the ADA, by, among others things, requiring Defendant to comply with Version 2.0 of the Web Content Accessibility Guidelines developed by the Worldwide Web Consortium. Compl. 8; 18-19 [#20]. Plaintiffs also seek a declaratory judgment that at the time of the commencement of the action, Defendant was in violation of the ADA, and payment of costs and reasonable attorney's fees. Defendant has moved to dismiss the Amended Complaint ("Complaint") [#20] pursuant to both Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), arguing, among other things, that Plaintiff improperly seeks to impose liability for Defendant's failure to follow voluntary standards for web accessibility that do not have the force of law. Mot to Dismiss Pls. Am. Compl. [#26]. For the reasons that follow, the motion is DENIED.

I. Standard

In ruling on a motion to dismiss, whether for failure to state a claim or lack of standing, the court must accept the plaintiffs' well-pleaded factual allegations and draw all reasonable inferences in the plaintiffs' favor. See Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 320 (1st Cir. 2008) (Rule 12(b)(6)); Blum v. Holder, 744 F.3d 790, 795 (1st Cir. 2014) (Rule 12(b)(1)). To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court "draw[s] the facts primarily from the complaint," and "may supplement those factual allegations by examining 'documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice.'" Butler v. Balolia, 736 F.3d 609, 611 (1st Cir. 2013) (quoting Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011)).

II. Background

Title III prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods and services of any place of public accommodation.[1] The ADA specifically requires Title III entities to "take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).[2]

Plaintiff Access Now, Inc. is a national disability rights organization. Am. Compl.

---

[1] Defendant does not dispute that its websites are places of public accommodation subject to regulation by Title III of the ADA.

[2] The ADA provides an exception where Title III requirements would fundamentally alter the

("Compl.") ¶¶ 14-18. Individual Plaintiffs Lisa Gathers, R. David New, and Stephen Theberge allege that they are all legally blind individuals who access the Internet using auxiliary aids known as screen readers, which convert a website's text, buttons, and links to audio. Id. ¶¶ 5, 19-21, 30, 32, 34 [#20]. Defendant owns and operates sixteen websites, including 1-800-Flowers.com, which sell various products and offer services to consumers. Id. ¶¶ 2-3.

Individual plaintiffs allege that they have tried to access websites run by Defendant using screen readers but have discovered myriad barriers that prevent them access. Id. ¶¶ 29-34. For example, plaintiffs allege that, among other things, the following problems arose when navigating one or more of the websites owned and operated by Defendant:

- Buttons are missing labels describing their action to a screen reader user;
- Error messages generated during the placement of orders are difficult for a screen reader to locate and read;
- Multiple audio streams automatically begin playing simultaneously on the customer support page, making it impossible to determine what any feed is saying;
- Images of items for sale on many of Defendant's websites do not provide any written description that a screen reader program can read aloud to describe the pictures;
- The screen reader is unable to "go back"

---

nature of the goods and services being offered or would result in an undue burden, but Defendant raises no argument based on either of these circumstances.

- The screen reader is unable to locate the correct field in which to type payment information.

Id. ¶¶ 30-34; see also id. ¶ 35 (alleging a number of additional barriers to access).

   III. Discussion

Defendant contends, first, that Plaintiffs' Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim because Plaintiffs allege that Defendant is liable for failing to comply with the Web Content Accessibility Guidelines despite these standards not having force of law under Title III of the ADA. Defs. Mem. 10-11 [#27]. Relatedly, Defendant argues that this court should not rule on whether compliance with the Web Content Accessibility Guidelines is required by Title III because deference to the Department of Justice's ("DOJ") rulemaking process[3] is appropriate under the primary jurisdiction doctrine. See Pejepscot Indus. Park, Inc. v. Me. Cent. R.R. Co., 215 F.3d 195, 205 (1st Cir. 2000) (noting that courts should determine whether deference is appropriate under the primary jurisdiction doctrine by considering (1) whether an agency determination lies at the heart of a task assigned by Congress to the agency; (2) whether agency expertise is required to

---

[3] In 2010, DOJ published an Advanced Notice of Proposed Rulemaking to revise the regulations implementing Title III. 75 Fed. Reg. at 43460. In that Advanced Notice of Proposed Rulemaking, DOJ solicited public comment on whether and how the agency should adopt the Web Content Accessibility Guidelines as its standard for website accessibility for Title II and III entities. 75 Fed. Reg. at 43465. No rule or regulation has been adopted as a result of the Advanced Notice of Proposed Rulemaking, and in 2015, DOJ announced that it will pursue separate rulemakings addressing Web accessibility for websites falling under Title II and Title III, and that DOJ will move forward with rulemaking for Title II first. See Andrews v. Blick Art Materials, LLC, No. 17-cv-767, 2017 WL 3278898, at *16 (E.D.N.Y. Aug. 1. 2017). In 2016, DOJ withdrew the Advanced Notice of Proposed Rulemaking and issued a Supplemental Advanced Notice of Proposed Rulemaking seeking input only related to the websites of entities covered by Title II. Id.

unravel intricate, technical facts; and (3) whether the agency's determination would materially aid the court).

Both arguments rest on a mistaken premise. Plaintiffs' Complaint does not allege that Defendant is liable for failing to comply with the Web Content Accessibility Guidelines. Instead, Plaintiffs allege that Defendant violates the ADA by "depriv[ing] blind . . . individuals the benefits . . . it affords non-disabled individuals." Compl. ¶ 7 [#20]. Plaintiffs request compliance with the Web Content Accessibility Guidelines only as a remedy, and do not contend that the failure to comply is a basis for liability in the first instance. Compl. ¶ 8 [#20]. Thus, the Complaint seeks to enforce the ADA's statutory requirements, rather than the Web Content Accessibility Guidelines.

Defendant also contends that Plaintiffs fail to state a claim under Rule 12(b)(6) for three additional reasons. Defendant argues that (1) Plaintiffs allege only that the screen-reader software does not work properly, not that the websites are incompatible with the software, Defs. Mem. 10 [#27]; (2) Plaintiffs rely on facts alleging harm encountered by all website users, not just blind website users, Defs. Mem. 10-11 [#27]; and (3) to the extent Plaintiffs do allege that the websites are incompatible with the software, the websites' issues are isolated incidents of mechanical failure, Defs. Reply 2-2 [#33]. The first two of these arguments are each contrary to the allegations contained in the Complaint. For example, Plaintiffs assert that Defendant's websites do not have text equivalents for every non-text element, Compl. ¶ 35(a) [#20]; that the websites do not present audio-only or video-only presentations in a way that sight impaired individuals can access, such as an audio or text description of video content; Compl. ¶ 35(b)-(c); and that its web pages lack titles that describe their topic and purpose, id.

5

¶ 35(k). Such allegations are sufficient to support the reasonable inference that the websites themselves – not the screen reader equipment – prevent blind and visually impaired individuals from equal access to the websites, and that Defendant is therefore in violation of Title III. See Blue Apron, 2017 WL 5186354, at *1 n.1 (denying a motion to dismiss where the "plaintiffs allege[d] that blueapron.com contains various input fields, links, and buttons that are not labeled or properly labeled—preventing the effective use of screen-reader software"). Regarding the third argument, Defendant identifies nothing in the Complaint that supports its assertion that the websites issues are isolated incidents of mechanical failure. Accepting Plaintiffs' well-pleaded factual allegations and drawing all reasonable inferences in Plaintiffs' favor, as the court must at this stage, see Caterpillar, 524 F.3d at 320, does not permit the conclusion that the numerous obstacles identified are isolated incidents of mechanical failure.

Separately, Defendant argues that Plaintiffs' complaint must be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), for absence of both ripeness and standing. Defendant first contends that the claim is not ripe for review because DOJ is in the midst of ongoing rulemaking proceedings to determine what standards will apply to Title III entities. Defs. Mem. 9-10 [#27]; see supra note 3. But, again, this case does not require the court to decide whether the ADA requires Title III entities to satisfy the Web Content Accessibility Standards. The allegations in the Complaint, if true, could support a finding that Defendant violated the ADA by failing to take the steps necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services from its websites. DOJ's rulemaking process has no impact on the fitness of this case for adjudication.

Next, Defendant contends that the individual Plaintiffs lack standing to bring this case because they have failed to plead an injury in fact. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (to establish standing, plaintiffs must plead an injury in fact which is concrete and particularized, and actual or imminent). Defendant contends that individual Plaintiffs "have alleged no facts showing that any of the alleged access barriers resulted in actual harm . . . or prevented them from accessing the [1-800-Flowers websites]" and "fail to adequately plead a concrete, present plan to return to the [websites]." Defs. Mem. 8.

Once again, Defendant's assertion is belied by the Complaint itself, which alleges numerous specific facts showing that barriers in Defendant's websites caused actual harm to the individual Plaintiffs. For example, the Complaint alleges that Plaintiff New could not locate and read error messages with his screen reader, Compl. ¶ 30 [#20], that Plaintiff Gathers encountered pictures of items for sale without matching written descriptions that her screen reader could read her, id. ¶ 32, and that Plaintiff Théberge was unable to locate where to type his credit/debit card information to complete an online purchase, id. ¶ 34. Such allegations are sufficient to establish the injury in fact required to survive a motion to dismiss. See Gniewkowski v. Lettuce Entertain You Enterprises, Inc., 251 F. Supp. 3d 908, 913-14 (W.D. Pa. 2017) (plaintiffs suffered an injury in fact under the ADA where "Defendant's website barred Plaintiffs' screen reader software from reading the content of its website," such that "Plaintiffs were unable to conduct on-line research to compare financial services and products").

Finally, Defendant argues that Plaintiff Access Now lacks associational standing for two reasons. See Defs. Mem. 8-9 [#27]. "[A]n association has standing to bring suit on behalf of its

members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).

First, Defendant contends that Access Now lacks associational standing because its members do not have standing to sue in their own right. This assertion fails because, as set forth above, the individual Plaintiffs have standing. Defendant's alternative argument that Access Now lacks associational standing because the claim asserted or the relief requested require the participation of individual members fairs no better. The question whether the alleged deficiencies in Defendants' websites constitute violations of Title III is a question of law, and requires no review of any individuals' particular circumstances. Moreover, both the declaratory and injunctive relief sought will apply to all individual members equally and need not be tailored to any particular member. See Camel Hair & Cashmere Inst. of Am., Inc., 799 F.2d 6, 12 (1st Cir. 1986) ("Actions for declaratory, injunctive and other forms of prospective relief have generally been held particularly suited to group representation."); see also Playboy Enters. v. Pub. Serv. Comm'n of Puerto Rico, 906 F.2d 25, 35 (1st Cir. 1990) ("[J]ust because a claim may require proof specific to individual members of an association does not mean the members are required to participate as parties in the lawsuit.").

IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss [#26] is DENIED.

Date: February 12, 2018                        Indira Talwani
                                                                    United States District Judge